# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 10-296 (JRT/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| John Philip Schanon, | |
| Defendant. | |

Allen A. Slaughter, Jr., Esq., Assistant United States Attorney, counsel for Plaintiff.

Douglas Olson, Esq., Assistant Federal Defender, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant John Philip Schanon's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 23). This Court held a hearing on the motions on December 3, 2010, and received testimony from Government witness Minneapolis Police Officer John Biederman. The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion be denied.

# BACKGROUND[1]

Throughout the year 2010, law-enforcement officers investigated Defendant in relation to controlled transactions involving weapons and illegal controlled substances in which he participated. After conducting several controlled buys with Defendant, on October 17, 2010, law enforcement utilized surveillance and again conducted a controlled buy using a confidential informant ("CRI") to purchase methamphetamine from Defendant. Law enforcement had used this particular informant before in its investigation of Defendant and others.[2] The informant had testified in more than one matter in the past, and has demonstrated reliability.[3]

On October 17, 2010, law enforcement had the CRI call Defendant to set up a drug buy. The phone call and the subsequent conversations between Defendant and the CRI were audio recorded and surveillance was utilized. The CRI and Defendant agreed to meet at the Maplewood Mall. At the mall, the CRI gave $3200 to Defendant. Defendant then initially told the CRI to go to the Sun Ray Bowling Alley, and then later instructed the CRI to meet at the Hogs Breath

---

[1]     The following summary is based on Officer John Biederman's testimony provided at the December 3, 2010 hearing. Officer Biederman has worked for the Minneapolis Police Department since 1998, and has worked as a Bureau of Alcohol, Tobacco, and Explosives Task Force Officer for the past few years.

[2]     This informant had been utilized to make controlled buys from Defendant previously on June 2 (for a weapon), June 20 (for a weapon), and Sept. 26, 2010 (for methamphetamine and a weapon).

[3]     Defendant does not contest the reliability of this informant.

bar on Rice Street in St. Paul, Minnesota.  The CRI drove to the Hogs Breath

bar, and Officer Biederman followed in an unmarked vehicle.[4]  Officer Biederman

had checked the CRI's vehicle prior to this point to make sure there were no

illegal substances in it.  Once Defendant arrived at the Hogs Breath bar,

Defendant got into the CRI's vehicle.  The CRI then drove a short distance and

parked at a car wash.  After Defendant provided the CRI with 55 grams of

methamphetamine, Defendant got out of the CRI's vehicle and walked back to

the bar, where he got in the vehicle that he was previously driving.  There was

also a passenger in the vehicle that Defendant was driving who Officer

Biederman suspected might be Defendant's drug source.  The CRI then reported

back to Officer Biederman and provided him with 55 grams of methamphetamine.

The CRI told Officer Biederman that Defendant had stated that he was in

possession of more methamphetamine in the vehicle that he was driving.

At that point, Officer Biederman decided to get assistance from the

St. Paul Police Department to initiate a stop of Defendant's vehicle so that they

could attempt to recover the methamphetamine that Defendant still possessed

and to arrest him based on his current and prior transactions relating to weapons

and illegal controlled substances.  Officer Biederman continued to follow

Defendant's vehicle for approximately fifteen minutes until St. Paul Police officers

were able to locate Defendant and initiate the stop.  After the vehicle stopped,

---

[4]     The officers lost surveillance on Defendant's vehicle at some point after he left the mall, but regained surveillance of Defendant at the Hogs Breath bar, which was over an hour later.

the officers removed Defendant from the vehicle from the driver's side and arrested him. The officers searched the vehicle and found a box of shot-gun shells and a partial roll of black electrical tape. Officer Biederman then crouched down near the driver's side door and saw there was a box or device of some sort, which turned out to be an eyeglass case, taped shut with black electrical tape, and affixed to the underside of the car with a magnet.[5] It was located in such a place that if one sat in the driver's seat, one could reach out and grab it from underneath the vehicle. Officer Biederman testified that he feared that if he would have left the device there it might have been lost in the towing process, so he pulled it from underneath the vehicle. Officer Biederman removed the tape and opened the eyeglass case, and inside recovered 27 grams of methamphetamine.

During the stop, St. Paul Police learned that Defendant had a warrant out for his arrest out of the state of Wisconsin. The officers then impounded the vehicle that Defendant was driving. The officers did not recover all $3200 of the money provided to Defendant for the drug buy; they did retrieve $1200 from the passenger in the vehicle Defendant was driving, and a few dollars from Defendant. Officer Biederman suspects that the missing $2000 was used to purchase the methamphetamine that ultimately was given to the CRI, and that

---

[5] The CRI had told Officer Biederman at some point in the past that the CRI knew Defendant to use some sort of magnetic device to secure contraband underneath his car.

the Defendant probably purchased the methamphetamine from someone after he left the mall, but before he arrived at the Hogs Breath Bar.

Defendant was subsequently indicted for (1) Conspiracy to Possess with the Intent to Distribute Methamphetamine; (2) Possession with the Intent to Distribute Methamphetamine; (3) being a Felon in Possession of a Firearm; and (4) being Unlicensed Dealing in Firearms, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, and Title 18, United States Code, Sections 922(a)(1)(A), 922(g)(1), 924(a)(1)(D), and 924(a)(2). (*See* Doc. No. 1.)

## DISCUSSION

Defendant originally argued in a boilerplate fashion that any physical evidence obtained as a result of a search and seizure should be suppressed on the grounds that (1) any search warrant was issued without a sufficient showing of probable cause, and any search warrant was executed in an illegal and unlawful manner, and not in good faith; and (2) any searches and seizures were conducted without a warrant, probable cause, and exigent circumstances. In his post-hearing brief, he has narrowed his argument. He now only argues that the methamphetamine seized from the eyeglass container that was attached to the underside of the vehicle he was driving on the date of his arrest should be suppressed on the ground that the seizure and search of the container was without a warrant and no exception to the Fourth Amendment's warrant requirement applies.

This Court concludes the search for the container affixed to the bottom of the vehicle did not violate the Fourth Amendment because Defendant had no legitimate privacy interest in the undercarriage of the vehicle. And even if Defendant did have some privacy interest in the container itself, Officer Biederman had probable cause to believe both the vehicle and the eyeglass case contained contraband and he was entitled to search the vehicle and the container without a warrant under the automobile exception.

First, a person "has a lesser expectation of privacy in a motor vehicle . . . because [a vehicle's] function is transportation and it seldom serves as one's residence or as the repository of personal effects." *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974). Here, the eyeglass case was affixed via a magnet to the undercarriage of the vehicle that Defendant was driving, and therefore the container was in plain view for the public to see. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.* at 591 (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). More specifically, the Supreme Court has explained that there is no reasonable expectation of privacy in the undercarriage of a vehicle. *See New York v. Class*, 475 U.S. 106, 114 (1986) ("The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'"); *United States v. Rascon-Ortiz*, 994 F.2d 749, 754 (10th Cir. 1993) ("The undercarriage is part of the car's exterior, and as such, is not afforded a reasonable expectation of privacy."). And at least one district court has found

that a toolbox located in an open truck bed "was not subject to Fourth

Amendment protection." *United States. v. Hephner*, 260 F. Supp. 2d. 763, 776

(N.D. Iowa 2003). It follows that Officer Biederman's examination of the

undercarriage of the vehicle Defendant had been driving and the eyeglass case

affixed to the undercarriage of the vehicle is not subject to Fourth Amendment

protection either, and Defendant's motion should be denied.

However, even if Defendant did have some privacy interest in the

container itself, Defendant's motion should still be denied based on the

automobile exception. With respect to warrantless searches, the Supreme Court

explained as follows:

> The Fourth Amendment proscribes all unreasonable searches and
> seizures, and it is a cardinal principle that searches conducted
> outside the judicial process without prior approval by judge or
> magistrate are *per se* unreasonable under the Fourth Amendment –
> subject only to a few specifically established and well-delineated
> exceptions.

*Horton v. California*, 496 U.S. 128, 133 n.4 (1990) (quoting *Mincey v. Arizona*,

437 U.S. 385, 390 (1978)). One of these exceptions, the automobile exception,

allows police officers to conduct a warrantless search of a vehicle and containers

within the vehicle whenever probable cause exists. *California v. Acevedo*, 500

U.S. 565, 580 (1991); *United States v. Sample*, 136 F.3d 562, 564 (8th Cir.

1998). Under this rule, police may search a vehicle if they have probable cause

to believe that the vehicle contains contraband. *United States v. Payne*, 119

F.3d 637, 642 (8th Cir. 1997). In such circumstances, the police may search

every part of the car and its contents that may conceal the object of the search. *Id.*; *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Containers attached to a vehicle are to be treated as part of the vehicle rather than as other containers, and therefore the automobile exception applies to such containers. *See Reid v. State*, 388 So. 2d 208, 210 (Ala. 1980) (stating that "the tool box in the instant case was affixed to the body of the pickup truck" and therefore the court "appl[ied] the automobile exception").

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Nolen*, 536 F.3d 834, 839 (8th Cir. 2008); *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (*citing Illinois v. Gates*, 462 U.S. 213, 236 (1983)). "[P]robable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity[.]" *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005). When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002); *see also Tokar v. Bowersox*, 198 F.3d 1039, 1046-47 (8th Cir. 1999) ("The determination of whether probable cause exists must not rest on isolated facts; rather it depends

8

on the cumulative effects of the facts in the totality of circumstances.")

(quotations omitted). And this Court is required to give law enforcement officers

"substantial latitude in interpreting and drawing inferences from factual

circumstances." *United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997)

(citations omitted).

Courts consider various factors in determining whether information from an

informant is sufficiently reliable to establish probable cause. *United States v.*

*Buchanan*, 574 F.3d 554, 561-62 (8th Cir. 2009). "An informant's tip may be

sufficiently reliable to support a probable-cause determination if the informant

has previously provided reliable information or if the tip is corroborated by

independent evidence." *United States v. Leppert*, 408 F.3d 1039, 1042 (8th Cir.

2005).

Here, Defendant does not contest that the informant used in this case is

reliable. He only argues that the search of the eyeglass container was

unreasonable because at the time of his arrest, while law enforcement "had

probable cause to arrest him for the drug transaction, they had no solid

information that he was in possession of drugs or contraband[.]" (Doc. No. 34,

Mem. in Supp. or Def.'s Mot. to Suppress Physical Evidence 3.) This Court

disagrees. The officers did have information from a very reliable informant—who

had just moments before participated in a controlled buy with Defendant—that

Defendant had more methamphetamine in the vehicle that he was driving. Law

enforcement had used this CRI multiple times previously to conduct controlled

buys of both drugs and weapons from Defendant. In addition, the CRI had told

Officer Biederman that he knew Defendant to use some sort of magnetic device

to secure contraband underneath his car. Therefore, considering the totality of

the circumstances known to the officers just prior to the stop and search of the

vehicle that Defendant was driving, this Court concludes that the information was

sufficient to establish the necessary probable cause to support the search of the

vehicle for controlled substances. After the stop, law enforcement found

additional indicia of criminal activity when they searched the passenger

compartment of the vehicle and the passenger, including shotgun shells and part

of the controlled-buy funds. Therefore, when Officer Biederman crouched down

beside the vehicle Defendant was driving and saw some sort of device affixed to

the underside of the car that was similar to that described by the CRI as a device

that Defendant was known to carry contraband in, it was reasonable for him to

believe that contraband would be located inside that device. As the Supreme

Court stated in *California v. Acevedo*, "[r]ecognizing that under *Carroll*, the 'entire

vehicle itself . . . could be searched without a warrant,' we concluded that

'prohibiting police from opening immediately a container in which the object of the

search is most likely to be found and instead forcing them first to comb the entire

vehicle would actually exacerbate the intrusion on privacy interests." 500 U.S. at

574 (quoting *Ross*, 456 U.S. at 821 n.28). In addition, the Court has explained

that "[t]he scope of a warrantless search of an automobile . . . is not defined by

the nature of the container in which the contraband is secreted. Rather, it is

defined by the object of the search and the places in which there is probable

cause to believe that it may be found." *Ross*, 456 U.S. at 824. Thus, this Court

concludes that the search of the eyeglass container was reasonable and

permissible under the Fourth Amendment because the totality of the information

known to the officers supported a finding of probable cause. Therefore,

Defendant's motion should be denied.[6]

---

[6]     In addition, it is likely that the Eighth Circuit would agree that Officer
Biederman would have been able to search the eyeglass container without a
warrant as a search incident to a lawful arrest. A vehicle can be searched
incident to an arrest "when it is reasonable to believe evidence relevant to the
crime of arrest might be found in the vehicle." *Arizona v. Gant*, 129 S.Ct. 1710,
1723 (2009). In such cases, "the offense of arrest will supply a basis for
searching the passenger compartment of an arrestee's vehicle and any
containers therein." *Id.* at 1719. Here, Defendant was arrested based on his
previous weapons-related conduct, and his previous and current controlled-
substance-related conduct. Based on the fact that the Defendant had just
minutes before participated in a controlled-drug buy, and based on the CRI's
information that Defendant apparently had more methamphetamine in the vehicle
that he was driving, it was reasonable for the officers to believe that there was
evidence relevant to the crime of arrest in the vehicle (i.e. more
methamphetamine and/or the money used during the controlled-buy transaction).

While Defendant argues that because the eyeglass container was found
attached to the underside of the car it is outside the passenger compartment, the
Eighth Circuit, although pre-*Gant*, has broadly interpreted passenger
compartment. *United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir. 1990)
("'Passenger compartment' has been interpreted broadly by most courts . . . and
generally includes whatever area is within a passenger's reach."). The Eighth
Circuit has further instructed that the "areas reachable by an occupant without
exiting the automobile may be searched incident to arrest, but an area that is
outside any occupant's reach or that could be reached only through an elaborate
dismantling of the vehicle may not be searched." *U.S. v. Barnes*, 374 F.3d 601,
604 (8th Cir. 2004). "As long as an occupant could have reached an area while
inside the vehicle, then the police may search that area incident to a lawful
arrest." *Id.* Because the eyeglass container was located immediately outside
and underneath the driver's side door, which would have been reachable by an

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1.      Defendant's Motion to Suppress Evidence Obtained as a Result of

Search and Seizure (Doc. No. 23), be **DENIED**.


Date:  December 27, 2010

                                                     *s/Jeffrey J. Keyes*
                                                     JEFFREY J. KEYES
                                                     United States Magistrate Judge



Under D. Minn. LR 72.2(b), any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**January 10, 2011**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

---

occupant without exiting the vehicle, and the officers could retrieve the container
without dismantling the vehicle, and in light of the case law supporting that there
is no reasonable expectation of privacy in the undercarriage of a vehicle, *see
Class*, 475 U.S. at 114; *Rascon-Ortiz*, 994 F.2d at 754, the Eighth Circuit would
likely agree that the search here was reasonable and did not violate the Fourth
Amendment.